UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SANDY M. KELLER                                    CIVIL ACTION

VERSUS                                             NO. 19-13191

LOUIS   DEJOY,   UNITED   STATES                   SECTION (3)
POSTMASTER GENERAL

ORDER & REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. No. 43) filed by defendant, Louis DeJoy, United States Postmaster General. The motion is opposed. (Rec. Doc. No. 59).

I.      BACKGROUND

On October 18, 2019, Plaintiff, Sandy M. Keller ("Keller") brought a civil action for damages under Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000, *et seq*., and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*., against Louis DeJoy, the Postmaster General of the United States Postal Service ("USPS").

A. Judicial Complaint

Plaintiff is a white female who is employed by the USPS as a letter carrier. (Rec. Doc. No. 1). She asserts Title VII employment-discrimination claims against the USPS for race-based disparate treatment and hostile work environment, among others. *Id*. Plaintiff works at the Chalmette Post Office ("CPO"), and alleges that she was the victim of reverse racial discrimination by her direct supervisor, Gordon Tunnell ("Tunnell") and the CPO Postmaster at the time, Denise Trepagnier ("Trepagnier"), both of whom are black. *Id*. Plaintiff alleges that during their tenure, Tunnell and Trepagnier engaged in a pattern and practice of treating black employees more favorably than white employees with respect to attendance, leave, and enforcement of USPS policies. (Rec. Doc. No. 59, p. 2-3). Additionally, Keller alleges that Tunnell and Trepagnier

1

tolerated, condoned, and encouraged a variety of workplace behavior from black employees that amounted to prejudicial, disparate treatment of white employees by allowing black employees to harass, threaten, and assault white employees without fear of termination or serious discipline. *Id*. at 3. Furthermore, Plaintiff alleges that black employees were permitted to engage in acts that white employees would be disciplined or terminated for, such as failing to deliver certified mail, failing to report leave time, verbally harassing or assaulting co-workers, stalking co-workers, bringing illegal drugs to USPS property, stealing mail, bearing false witness to workplace incidents, and committing other felonious crimes on USPS property. (Rec. Doc. No. 1, p. 6). Plaintiff contends this contributed to a hostile and discriminatory work environment. *Id*. at 7.

Plaintiff indicates a number of specific occurrences. On April 27, 2017, Plaintiff states that Whitney Berry ("Berry"), a black employee, committed battery upon Kevin Thomas ("Thomas"), a white employee. *Id*. Berry further threatened that her boyfriend would come to the CPO and "blow up the place." *Id*. When her boyfriend did arrive, an employee called 911 and Berry was arrested, and the St. Bernard district attorney filed a bill of information instituting charges against her, and ultimately convicting her of simple battery. *Id*. Keller witnessed this incident and testified at the criminal trial against Berry. Keller contends, however, that Tunnell "tried to interfere with employee testimony by reassigning potential witnesses to remote routes that would render them unavailable for the criminal trial." *Id*. at 8.

On November 15, 2017, Tunnell announced that Berry would be returning to work at the CPO, causing Plaintiff to fear she would be harmed, and to begin "shaking uncontrollably" and feel "sick with anxiety." *Id*. This resulted in Plaintiff seeking medical treatment for anxiety, using FMLA leave time for treatment. *Id*. at 9. Keller alleges that because she used FMLA leave to seek treatment and because she testified against Berry, Tunnell began harassing her, leading to the

EEOC complaint. *Id*. That complaint includes a number of claims, addressed in greater detail below, involving incidents ranging from the alteration of her timesheets to threats from another coworker, Shantrell Berfect ("Berfect"), who plaintiff alleges threatened to "whip [Plaintiff's] ass" in front of her supervisors who did nothing to address these issues. *Id*. at 12. Keller contends that she "feared for her life that she would be assaulted or killed by Berfect." *Id*. at 13. She continues to seek treatment with physicians over the incidents, requiring therapy and medication. *Id*.

### B.  Administrative Complaint

On January 6, 2018, Plaintiff submitted an EEO Administrative Complaint to the USPS. (Rec. Doc. No. 43, p. 4). In it, she alleges discrimination on the basis of race in three instances: (1) November 21, 2017, when she became aware that her request for sick leave was denied by Tunnell and she was charged with being absent without official leave ("AWOL"), (2) November 21, 2017, when she was sent an Absence Inquiry letter by Tunnell, and (3) November 21, 2017, when she became aware that her request for Family Medical Leave was denied. (Rec. Doc. No. 43-4, p. 1). On January 25, 2018, the Postal Service accepted her complaint alleging her sick leave was denied and she was charged with being AWOL. *Id*. at 4. The other two claims, regarding the absence inquiry letter and the denial of FMLA coverage, were dismissed. *Id*.

On March 29, 2018, Plaintiff amended her EEO Administrative Complaint to include (1) March 3, 2018, when she became aware that her annual leave request for the second week of vacation was not processed and the time was changed to leave without pay ("LWOP"), (2) March 16, 2018, when she was threatened by a coworker [Shantrell Berfect] in a meeting being held in Trepagnier's office and (3) on March 20, 2018 when, after reporting being threatened by a coworker [Berfect] in front of Postmaster Trepagnier, management failed to properly address the

matter. (Rec. Doc. No. 43-5, p. 1). On April 2, 2018, the USPS accepted all three of these amended

issues. *Id*. at 4.

While the EEO Administrative Complaint, as amended, was pending, Plaintiff withdrew

her request for a hearing. Accordingly, Administrative Judge Erania Ebron issued an Order and

Decision dismissing Plaintiff's EEO Administrative Complaint. On October 24, 2019, the USPS

issued a Notice of Final Action, which implemented the Administrative Judge's dismissal.

### C.  The Instant Motion

In the instant motion, the USPS advances the dismissal of several of Keller's claims.[1] First,

the Defendant argues that during discovery, Plaintiff identified many events that occurred in late

2018 and 2019 which she did not identify in her Complaint, and failed to amend or initiate a new

EEO Administrative Claim based on these new events. (Rec. Doc. No. 43-1, p. 2). Therefore,

Defendant contends that Plaintiff failed to exhaust her administrative remedies regarding this

portion of her race-based hostile work environment claim. *Id*.

Second, regarding Plaintiff's race-based disparate treatment claim, USPS contends that

specific incidents Keller described were not adverse employment actions, and that even the

incidents involving mishandling of leave requests cannot be attributed to race. *Id*. Furthermore,

---

[1] Plaintiff's brief states that, "Defendant has not alleged an absence of a genuine issue of material fact as to Keller's FMLA and Title VII retaliation claims. Regardless of the outcome of the summary judgment motion, this matter will proceed to trial on the FMLA and retaliation claims." (Rec. Doc. No. 59, p. 24). Defendant states that "undersigned counsel was under the impression that Plaintiff was arguing that her FMLA leave was denied as a form of race-based disparate treatment or race-based harassment. Defendant is not asking the Court to dismiss any FMLA or retaliation claims based on this limited briefing. Rather, Defendant requests that, if this Court believes Plaintiff has stated a retaliation claim or an FMLA claim, Defendant be afforded an opportunity to file a separate motion on these claims." (Rec. Doc. No. 63, p. 13). In Keller's initial complaint, claims #1, 2, and 3 are captioned as, "Discriminatory and Retaliatory Denial of Properly Designated FMLA Leave." (Rec. Doc. No. 1, p. 14). Paragraphs 27 and 28 describe retaliation of Tunnell by changing Plaintiff's FMLA leave designation to harass her for taking leave and filling out a Report of Hazard due to Berry's return and for testifying against Berry. *Id*. Paragraphs 37-40, titled "FMLA," include descriptions of the violations of the Family Medical Leave Act. *Id*. at 18-20. Therefore, the Court finds that Plaintiff has asserted retaliation and FMLA claims, and those claims will be allowed to proceed. However, the deadlines for dispositive motions have passed, and Defendant will not be afforded an opportunity to file separate motions on these claims.

USPS contends that even if this Court determines that Keller is able to establish the prima facie elements of her disparate treatment claim, Tunnell had legitimate, non-discriminatory reasons for acting as he did. *Id*.

Finally, USPS argues that Keller cannot establish the prima facie elements of her hostile work environment claim because she fails to establish that the alleged harassment was race-based or that it was severe and pervasive enough to constitute a hostile work environment. *Id*. Plaintiff, however, contends that she is not required to exhaust her administrative remedies for acts subsequent to her EEO Administrative Claim. (Rec. Doc. No. 59, p. 2). She states that all of the actions outside the relevant time period simply serve to provide additional evidence of the same hostile environment raised in the EEO complaint. *Id*. Further, Keller contends that issues of material fact exist as to whether Tunnell and Trepagnier were guided by racial animus in their acts and omissions and whether the proffered non-discriminatory reasons are pretext. *Id*. Finally, Plaintiff contends that her allegations establish a prima facie case of hostile work environment. *Id*.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). After the moving party has met its burden, if the non-moving party is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

When evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence." *Total E & P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). Additionally, a court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id.* To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence" that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, … if the nonmoving party rests merely

6

upon conclusory allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).

Furthermore, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

Where the movant bears the burden of proof on an issue, they must establish "beyond peradventure all of the essential elements of the claim… to warrant judgment in [their] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The movant must establish their right to prevail as a matter of law. *FDIC v. Hamilton*, 939 F.2d 1225, 1228 (5th Cir. 1991) (citing Fed. R. Civ. P. 56).

## III.    ANALYSIS

### A.    Failure to Exhaust Administrative Remedies

The USPS contends that because Keller failed to either amend her EEO Administrative Claim to include the incidents occurring later in 2018 and 2019 involving two of her coworkers, Berfect and Eboni Lee ("Lee"), or to initiate a new EEO Administrative Claim based on these new events, she has failed to exhaust her administrative remedies regarding these portions of her race-based hostile work environment claim. (Rec. Doc. No. 43-1, p. 2). Specifically, Defendant asks the Court to dismiss any hostile work environment claims regarding incidents that occurred after she amended her EEO Administrative Claim. *Id*. at 6. Defendant contends that the failure to include complaints about Lee entirely and any of her post-March 2018 complaints about Berfect as part of

her EEO Administrative Claim deprived the USPS an opportunity to investigate these matters. *Id*. at 7.

Keller contends that she is not required to exhaust her administrative remedies for subsequent incidents. (Rec. Doc. No. 59, p. 7). The administrative complaint alleged race-based discrimination against supervisor Tunnell based on changing FMLA leave to AWOL and the absence inquiry letter sent to Keller. *Id*. The amended administrative complaint made additional allegations of discrimination by Tunnell as it related to his altering her FMLA leave for a second time in February 2018 from annual leave to LWOP. *Id*. at 8. The amended complaint also included allegations of discrimination, retaliation, and hostile work environment claims against Trepagnier arising out of incidents in March 2018 where Trepagnier failed to stop Berfect's threats and harassment against Keller despite witnessing the incidents. *Id*. Keller contends that the subsequent incidents at issue relate to the basic allegations in the administrative complaint of race-based discrimination by black supervisors against Plaintiff, as they all involve the same pattern of discriminatory conduct. *Id*. "Put another way, the same basic unlawful conduct alleged in [Plaintiff's] EEO complaints, and the organic continuation of lax management practices fostered a hostile work environment." *Id*. at 8-9.

To exhaust, a plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Administrative exhaustion "is not a jurisdictional requirement," *Story v. Gibson ex rel. Dep't of Veran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018), but neither is it merely "a procedural 'gotcha' issue." *Ernst v. Methodist Hosp. System,* 1 F.4th 333, 337 (5th Cir. 6/8/2021). Administrative exhaustion "is a mainstay of proper enforcement of Title VII remedies," and exists "to facilitate

the [EEOC's] investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." *See id.*; *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012).

To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge. *See id.* That requirement relates to a key purpose of an employment-discrimination charge, which is to give the employer notice of the existence and general substance of the discrimination allegations. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003). However, a claim need not always arise from the EEOC charge form for exhaustion to occur, as in some instances, other documents may serve as a charge. *Jackson v. DeJoy*, 19-12403, 2021 WL 5367268, at *6 (E.D. La. 11/17/2021) (Roby, K) (citing *Manning*, 332 F.3d at 879). To assess whether a filing is a charge, the key question is whether "the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Federal Express v. Paul Holowecki*, 552 U.S. 389 (2008).

Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC or that could not "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws. *Jackson*, 2021 WL 5367268, at *6. In hostile work environment claims, however, if one act alleged to have created the hostile work environment is timely exhausted, "a court may consider 'the entire scope of the hostile work environment claim.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)).

The continuing-violation doctrine relieves a plaintiff of establishing that all the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)). To apply this "continuing violation doctrine… the plaintiff must demonstrate that the separate acts are related." *Id.*; *Donley*, 690 F.3d at 647. However, "[t]he United States Supreme Court has made clear that the continuing[-]violation doctrine does not apply to discrimination and/or retaliation claims." *Skaggs v. Van Alstyne Indep. Sch. Dist.*, No. 4:16-CV-00227-CAN, 2017 WL 77825, at 6 (E.D. Tex. Jan. 9, 2017) (citing *Morgan*, 536 U.S. 110-21); *see Health v. Bd. of Sup'rs for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), as revised (Mar. 13, 2017) ("Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are."); *see also Cicalese v. Univ. of Texas Medical Branch*, 456 F. Supp. 3d 859 (S.D. Tex. Feb. 5, 2020) (To the extent that the plaintiffs' hostile-work environment claims rely upon acts preceding the cutoff date to support their discrimination claims, the continuing-violation doctrine does not apply.)

"A hostile work environment claim exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart*, 586 F.3d at 328 (quoting *Morgan*, 536 U.S. at 116). To determine whether a work environment is "hostile," courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

Because a hostile work environment claim involves repeated conduct, the "unlawful employment practice" does not occur on any particular day, but rather over a series of days, months, or years. *Jackson*, 2021 WL 5367268, at *7. Furthermore, a single act of harassment, unlike discrete acts of discrimination, may not be actionable standing alone, as a hostile work environment claim is typically based on the cumulative effect of individual acts. *Id*. Following the *Jackson* court in a case extremely similar to this, this Court has decided that, "provided that an act contributing to the claim occurs within the filing period, the conduct during the entire time period involved in the creation of the hostile environment may be considered in determining liability." *Id*. Therefore, so long as one of a series of acts that are part of the same unlawful employment practice falls within the statutory time period for filing a charge, the charge will not be time-barred.

In *Stewart v. Miss. Transp. Comm'n*, the Fifth Circuit held that a male supervisor's actions towards the plaintiff female employee during the two periods she was assigned to work for him did not constitute a continuing violation for purposes of the plaintiff's hostile work environment claims under Title VII. *Stewart*, 586 F.3d at 321. The Court held that even though the later acts were sufficiently related to the earlier ones to constitute a single "practice" for limitations purposes, the two periods of alleged harassment were severed by the employer's intervening act of reassigning the plaintiff to a different supervisor. *Id.* The Fifth Circuit noted that the proper focus of the "continuing violation" inquiry under Title VII is the employer's remedial action in addressing the employee's complaints in the first instance. *Id.* Therefore, a subsequent act can be relevant to this inquiry only when it casts doubt on the reasonableness of the remedial action in the context of the employer's policies and practices. *See Jackson*, 2021 WL 5367268, at *7.

Additionally, in *National R.R. Passenger Corp. v. Morgan*, the Supreme Court considered a Title VII claim for workplace harassment. *Morgan*, 536 U.S. at 106. The plaintiff in that case

alleged a host of discriminatory and retaliatory acts were committed against him, some occurring within the limitations period and some outside of it. *Id.* The Court found that for discrete and easy to identify acts (such as a termination) the time bar applied if the acts were committed outside the limitations period. Hostile work environment claims, on the other hand, are based on the "cumulative effect of individual acts." *Id.* at 115. Therefore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117; *Heath* 850 F.3d at 740.

In this case, Plaintiff alleges that her complaint alleges a series of discriminatory acts that constitute one continuing, overarching unlawful employment practice: CPO managers favoring black employees over white employees by treating white employees more harshly. (Rec. Doc. No. 59, p. 10). Plaintiff contends that Tunnell's interference with her FMLA sick leave, denial of sick pay, and harassment in sending the absence inquiry letter, are actionable incidents which establish a larger pattern of discriminatory intent, and that the incidents involving Berfect and Lee are of the same nature. *Id.* Plaintiff alleges that, "[t]he subsequent incidents amplify, clarify and more clearly focus the early events described by Keller in her EEO complaint." *Id.* at 11. According to Keller, "Incidents occurring after August 2018 through June 2019 are part of the totality of incidents that comprised a pattern of disparate treatment and serve as background information regarding Keller's hostile work environment claim." *Id.*

According to Keller, throughout discovery, she and other witnesses have testified to or produced documents relating to subsequent incidents of misconduct by Berfect and Lee directed at white employees, including Keller. (Rec. Doc. No. 59, p. 7). Defendant specifically seeks

summary judgment for the portions of the hostile work environment claim involving Lee and Berfect after March 2018.

The amended Administrative Complaint filed by Keller includes several incidents alleged to have involved Berfect, including on March 17, 2018, when Berfect screamed at Keller "[y]ou need to watch where you're going" as Keller took mail to the mail truck, and on March 20, 2018, when Berfect confronted Keller in the parking lot and stated "[y]ou better walk with your head hanging down." (Rec. Doc. No. 59, p. 6). The same day, after Keller approached Trepagnier about that incident, Berfect allegedly stated, "Yeah you go and get Denise [Trepagnier], I ain't worried about Denise… I'll whip your [a**] before she gets to me." *Id*. Plaintiff contends that this statement was overheard by Trepagnier, and no action was taken. Defendant states that "Tunnell and Trepagnier attempted to remove Berfect from service on March 3, 2018, as a result of incidents on February 8, 2018 and March 2, 2018," thus "sever[ing] any preceding acts regarding Berfect." However, Keller included incidents involving Berfect's threats in her amended administrative complaint *after* Tunnell and Trepagnier allegedly attempted to have Berfect removed. Ultimately, Berfect was not removed and more incidents ensued.

The Administrative Claim, as amended, essentially contends that the hostile work environment was created by inconsistencies in the processing of leave time and discipline for white and black employees. Thus, the Court finds that any further altercations between Berfect and Keller relate back to the amended filed charge explicitly listing Berfect as an antagonist, and as such, the continuing violation doctrine applies. Therefore, any claims arising from the March 2018 incident with Berfect are exhausted and summary judgment as to this portion of the claim is **DENIED**.

Additionally, Plaintiff complains generally about Eboni Lee's conduct in the workplace. However, the affidavit is devoid of any clarity as to time, place, event, or even which if any

instances involved Keller directly. Keller states that the subsequent incidents involving Lee relate to the basic allegation in her administrative complaint of race-based discrimination by black supervisors against white employees. (Rec. Doc. No. 59, p. 8). Further, she states that Berfect and Lee were permitted to "verbally harass, intimidate and assault Keller and other white employees without consequence." *Id*. at 10. It is unclear from the record what exactly happened with Lee and at what point in time it occurred. Consequently, the Court finds that Plaintiff has failed to exhaust her administrative remedies regarding any alleged incidents with Lee, and summary judgment is **GRANTED** as to this portion of the claim.

####    B.  Title VII Race-Based Disparate Treatment Claim

The USPS contends that Tunnell had legitimate, non-discriminatory reasons for acting as he did, therefore, even if Keller can establish the prima facie elements of her disparate treatment claim, she cannot demonstrate that any actions were taken on account of her race. (Rec. Doc. No. 43-1, p. 2). Keller, however, contends that she meets the Title VII requirements of a prima facie claim of disparate treatment. (Rec. Doc. No. 59, p. 11).

Title VII creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required. *Id.* Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group. *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982).

To establish a prima facie disparate treatment claim a plaintiff must establish:

(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

"Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Cicalese v. University of Texas Medical Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)). A plaintiff can prove discriminatory motive through either direct or circumstantial evidence. *Id.* (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)). When a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework. *Id.; see also Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Id*. "The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1089 (5th Cir. 1995).

The parties do not contest the first two elements of a prima facie claim: that Keller is a member of a protected class and that she is qualified for this job. Defendant instead contends that

Keller cannot establish the third and fourth elements of the prima facie case: that she suffered adverse employment actions and that she was treated less favorably because of her membership in the protected class than others similarly situated who were not members of the protected class, under nearly identical circumstances.

### i. Adverse Employment Actions

Regarding the third element, USPS contends that three of Keller's complaints are not "adverse employment actions." (Rec. Doc. No. 43, p. 11). Specifically, Defendant states that Keller's complaints about testifying at Berry's trial, Berry's return to work at the CPO, and her verbal altercations with Berfect in March 2018 are not "adverse employment actions," and that to the extent plaintiff argues these incidents are part of her disparate treatment claim, such claims should be dismissed. *Id*. Defendant further contends that while the leave-related complaints may be adverse employment actions, Plaintiff admits that she has now been paid for all her requested leave, with the exception of Thanksgiving 2017. *Id*.

Plaintiff contends that she was subjected to adverse employment actions, including reclassifying her FMLA leave and interference with her right to union representation during an investigation that occurred based on a social media comment made by Keller. (Rec. Doc. No. 59, p. 13). Further, Plaintiff states that the other incidents show a pattern of discriminatory acts by Tunnell and Trepagnier directed at Keller and other white employees and rises to the level where a trier of fact could reasonably make an inference of discrimination. *Id*. Plaintiff states that these are not offered as adverse employment actions but to present a pattern of race-based discriminatory conduct by Tunnell and Trepagnier. *Id*.

 "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensation. An employment action that does

not affect job duties, compensation, or benefits is not an adverse employment action." *Welsh v. Fort Bend Independent School Dist.*, 941 F.3d 818, 824 (5th Cir. 2019). There is no question that the leave related complaints are adverse employment actions, as they involve granting leave and compensation. However, the Court agrees with the USPS that the complaints regarding Berry's trial, Berry's return to work at the CPO, and verbal altercations with Berfect are not "adverse employment actions."

Plaintiff states that these incidents show a pattern of discriminatory acts. However, the Fifth Circuit has noted that the pattern and practice method of proof is almost exclusively used in class actions. *Celestine*, 266 F.3d at 355-56; *see also Jackson*, 2021 WL 5367268, at *11. *Celestine* involved a series of individual claims by African American employees after the court denied class certification. *Id.* The court in *Celestine* noted that the Supreme Court has not applied the *Teamsters* method of proof in a private, non-class suit and described the distinction between individual discrimination claims and class actions, as follows:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision making. *Id*.

The *Celestine* court noted that other courts had reached the conclusion that the disparate impact or the pattern and practice method of proof may not be used in private non-class suits. *Id.* at 355-56 (citations omitted). The court concluded:

> Given the nature and purpose of the pattern and practice method of proof, this Court's precedents, and the precedents of other circuits, the district court did not err in refusing to apply the *Teamsters* method of proof as an independent method of proof to the appellants' individual claims in lieu of the *McDonnell Douglas* method at the summary judgment stage. *Id.* at 356.

This is not a 'pattern and practice suit' by Keller, nor is this a class action. In the case at bar, Plaintiff is proceeding as an individual under Title VII and must prove the elements of a

discriminatory discharge/disparate treatment claim as set forth in *McDonnell Douglas*. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Consequently, not only are these actions not "adverse employment actions," under the law, to the extent that Keller seeks to use these allegations as proof of pattern or practice, such is not available to her and her attempt to use these allegations for this purpose is impermissible.

### ii. Treatment of Similarly Situated Unprotected Class Employees

To establish disparate treatment, a plaintiff must demonstrate that a "similarly situated" employee under "nearly identical" circumstances, was treated differently. *Wheeler v. BL Development Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing *Mayberry*, 55 F.3d at 1090).

The USPS states that Keller has not offered any evidence that any of her supervisors used race-based language, either verbally or in writing. (Rec. Doc. No. 43, p. 11). Further, Defendant contends that the only evidence Plaintiff has is that Tunnell and Trepagnier are black and she is white and her subjective belief that race is involved. *Id*. at 11-12. Defendant also believes that Plaintiff is unable to identify a black comparator employee who has been treated more favorably, so she is unable to establish that any of her non-white coworkers were similarly situated when they experienced "nearly identical" circumstances. *Id*. at 12.

Keller argues that there is a black comparator employee, Reynell Haggins, another letter carrier, who was treated differently than Plaintiff under nearly identical circumstances. (Rec. Doc. No. 59, p. 14.) When Reynell Haggins requested FMLA leave, this request was granted without inquiry or modification, and thus, there is a substantial issue of material fact as to whether Tunnell treated similarly situated employee Haggins differently than Keller. *Id*. In Tunnell's deposition, he states that Reynell Haggins situation was different because she injured herself at work and was taken to the emergency room straight from the CPO by Trepagnier. (Rec. Doc. 63, p. 5). However,

the deposition of Ms. Haggins suggests otherwise, as she indicates she took leave for a planned carpal tunnel surgery, and that she never had to be rushed to the hospital from the CPO.[2]

Making all inferences in favor of the non-movant, the Court finds that there is an issue of material fact regarding whether or not Haggins, as a purported comparator, was treated differently upon submission of her leave request. Thus, the Court finds that Plaintiff has made a prima facie case of disparate treatment sufficient to survive summary judgment.

iii. **Pretext**

Once a prima facie case is established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. *Mayberry*, 55 F.3d at 1089. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. *Id.* To establish pretext, "[Keller] must substantiate h[er] claim through evidence demonstrating that discrimination lay at the heart of [Tunnell's] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Keller "must rebut each non[-]discriminatory reason articulated by [Tunnell]." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Keller must rebut each reason by "produc[ing] substantial evidence of pretext." *Wallace v. Seton Family of Hospitals,* 777 Fed. Appx. 83, 89 (5th Cir. 2019). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men [or women] in the exercise of impartial judgment might reach different conclusions." *Id.* Keller can establish

---

[2] From the deposition of Reynell Haggins:

 Q. And regarding – and I just want to make sure this is clear. Was there any time when you were at work and you were injured on the job and had to be rushed to the hospital?

A. No.

(Rec. Doc. No. 59-19, p. 12).

pretext by: (1) showing disparate treatment or (2) showing that Tunnell's proffered explanation is false or unworthy of credence. *See id.*; *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637-40 (5th Cir. 2011).

Defendant states that even if Keller can establish a prima facie case, USPS contends that there were legitimate, non-discriminatory reasons for each of the allegedly adverse employment actions taken. *Id*. at 13.

The USPS contends that Tunnell was a new supervisor at the time of the sick leave request at issue, and that Tunnell has acknowledged that he should not have sent plaintiff an absence inquiry letter or tried to call Plaintiff while she was out of work on FMLA leave. *Id*. Tunnell acknowledges that the way he inputted Keller's sick leave and FMLA leave was incorrect but describes this as "mistakes of a new supervisor dealing with a challenging and stressful situation – Berry's return to work at the CPO and a number of employees leaving work as a result of Berry's return." *Id*. Subsequently, Tunnell corrected Keller's leave and states that he uses these mistakes as an example of what not to do when he trains new supervisors. *Id*. The absence inquiry letter was sent because Tunnell believed Keller was on leave because of Berry's presence and wanted to let her know that Berry had been reassigned to the Bywater Post Office. *Id*. at 14-15.

Plaintiff contends that Defendant's claim that these were mistakes attributable to lack of experience is pretext. Plaintiff states that Tunnell had been employed with the USPS for seven years, and that Tunnell had been provided enough training and experience to avoid making such mistakes, supported by the testimony of former supervisor, Glenn Webster. *Id*. at 18. Further, plaintiff contends that when Reynell Haggins took FMLA leave, she did not receive an absence inquiry letter or loss of sick pay – Tunnell only changed the leave classification of Keller, Jackson, and Thomas — three white employees. *Id*. at 19. Additionally, Plaintiff contends that Trepagnier's

own testimony states that reclassifying time from FMLA sick leave to AWOL is difficult and not the product of inadvertence, and that an FMLA leave request would be visible in ERMS, contradicts Tunnell. *Id*. at 19-20 (citing Exhibit 5, p. 84, ln. 16-25).

The deposition of Trepagnier indeed calls the explanation offered by Tunnell into question. In response to a question asking if she could "easily identif[y]…or f[ind] out that [Keller] filed for FMLA leave under the ERMS notification system," Trepagnier answered in the affirmative. (Rec. Doc. No. 59-6, p. 9). When asked whether it was uncommon to simply mistake writing down or classifying someone as AWOL versus leave without pay, she stated that it was. *Id*. at 16-25.[3]

In his own deposition, Tunnell repeatedly states that "leadership told me" to send the absence inquiry letter. (*See* Rec Doc. No. 59-11, p. 15)[4], which directly contradicts Trepagnier's testimony that she would have advised against it if Tunnell had asked her what to do. Finally, in

---

[3] From the Deposition of Denise Trepagnier:

Q. You have never – I'm assuming, and correct me if I'm wrong, you have never wanted to write someone down when they requested time off under FMLA or got a notification from the ERMS system that they were requesting time off or saw them leave with an illness from the actual post office, and then went in the next day and wrote them down as absent without leave?

A. No.

Q. It's kind of a difficult mistake to make, wouldn't you agree?

A. Yes.

Q. Okay. Regarding the absence inquiry letter, when Ms. Keller was out for a few days, were you aware that Gordon Tunnell sent her an absence inquiry letter?

A. No.

Q. And if he had done that in under five days, that would have been unusual, correct?

A. Correct. (Rec. Doc. No. 59-6, p. 10).

[4] *See also* Rec. Doc. No. 59-11, p. 17, Deposition of Gordon Tunnell, "and, again, as a young supervisor reaching out for guidance, that's the guidance that I was receiving…"

the affidavit of Glenn E. Webster, a USPS employee who worked with supervisors on their training of the ERMS system, he stated, "I have worked with Gordon Tunnell personally and knew that he was trained on the ERMS system and familiar with how to input data into the system." (Rec. Doc. No. 59-15, p. 2).[5]

In evaluating the evidence, the Court finds that Keller has presented evidence of disparate treatment and there is a material question of fact regarding whether Tunnell's proffered justification is pretextual. Therefore, the request to dismiss plaintiff's claims relating to the leave requests is **DENIED**.

### C. Hostile Work Environment Claim

The USPS contends that Keller cannot establish the prima facie elements of her hostile work environment claim because she cannot establish that the alleged harassment was race-based nor that it was severe and pervasive. (Rec. Doc. No. 43-1, p. 2). Furthermore, USPS contends that the alleged harassment was a combination of business decisions and inadvertent mistakes, not

---

[5] In its reply memorandum, Defendant attempts to argue for the first time that Tunnell was directed to send the absence inquiry letter by District Safety Manager Kristina Connelly. (Rec. Doc. No. 63 at p. 4). Plaintiff opposes the inclusion of the affidavit testimony of Connelly which it contends adds, "new facts not obtained despite many months of extensive discovery." (Rec. Doc. No. 65 at p.7). Plaintiff provides that Connelly was not disclosed in initial disclosures, answers to interrogatories, or witness and exhibit lists and consequently has not been deposed. *Id.*

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing*, or on a motion any witness or information not so disclosed*." FED. R. CIV. P. 37(c)(1). Rule 37(c)(1) contains express exceptions that allow admission of the evidence when the party's failure to disclose the required information is substantially justified or harmless. *Id.* A district court considers four factors when determining if a violation of Rule 26(a) is harmless: (1) the explanation, if any, for the non-disclosing party's failure to comply with the discovery rule; (2) the prejudice to the opposing party by allowing the witness(es) to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony. *Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 380 (5th Cir.1996). The Court has broad discretion in deciding whether a violation of Rule 26(a) is substantially justified or harmless. *United States v. $9,041,598.68,* 163 F.3d 238, 252 (5th Cir.1998).

Here, because the witness was first disclosed in the reply memorandum filed by Defendant, the parties have not had an opportunity to brief whether the violation of Rule 26(a), if any, is harmless or substantially justified. Nonetheless, the Court finds that this issue need not be addressed in the context of the instant motion for summary judgment. Plaintiff has come forward with sufficient evidence to create a genuine issue of fact regarding Tunnell's explanation for the Absence Inquiry Letter and leave classifications.

discriminatory actions. *Id*. Keller, however, contends that she does in fact make a prima facie case for a hostile work environment. (Rec. Doc. No. 59, p. 22).

Title VII makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment." *Gardner v. CLC of Pascagoula*, L.L.C., 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117.

To survive summary judgment on a hostile work environment claim based on race or sex discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action." *Ramsey*, 286 F.3d at 268. "Where the alleged harasser is a supervisor, the employee need only satisfy the first four elements discussed above in making her prima facie case of hostile work environment." *Jackson v. DeJoy*, 2021 WL 5367268, at *14 (E.D. La. 11/17/2021) (Roby, K) (citing *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013)).

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citing *Ramsey*, 286 F.3d at 268) (quotation marks and citations omitted). Workplace conduct "is not measured in isolation." *Id*. In order to deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration." *Id*. This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

23

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id*. (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998) (citations omitted). "The critical issue in determining whether workplace activities constitute harassment based on [race] is whether members of one [race] are exposed to disadvantageous terms or conditions of employment to which members of the other [race] are not exposed." *Jackson*, 2021 WL 5367268, at *14 (citing *Reine v. Honeywell Intern. Inc.*, 362 F. Appx 395, 397 (5th Cir. 2010)). If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. *Id*.

Here, the USPS is not contesting the satisfaction of the first two elements of prima facie hostile work environment claim. (Rec. Doc. No. 43, p. 16). Rather, USPS contends that Keller cannot establish the third element – that the alleged harassment was race-based. *Id*. Defendant refers back to their arguments on disparate treatment as to this element. *Id.* Defendant contends that if this Court considers incidents that occurred after March 2018 as part of Keller's hostile work environment claim, this claim should still be dismissed because the undisputed testimony in the record demonstrates that Berfect and Lee were "equal opportunity harassers," as they got into loud arguments with black and white coworkers alike. *Id*. at 19-20.

Furthermore, USPS asserts that Keller cannot establish that the alleged harassment affected a term, condition, or privilege of employment under the fourth element. *Id*. Regarding the incidents with Berfect in March 2018, USPS contends that Keller cannot establish that the USPS failed to take prompt remedial action. *Id*. Defendant notes that immediately after those incidents, the USPS

conducted an internal investigation known as an Initial Management Inquiry Process ("IMIP"), which concluded that "there will not be any other problems out of them [Berfect and Keller]." *Id*. at 19.

Finally, USPS contends that Keller cannot establish that the alleged harassment was severe or pervasive. Defendant states that none of the conduct plaintiff complained of, in isolation or taken together, is "severe or pervasive" enough to satisfy the objective reasonable person standard. *Id*. at 17. USPS states that none of the conduct was objectively threatening or humiliating, and none of Keller's managers or supervisors are alleged to have used offensive language or engaged in race-based name calling. *Id*.

On the other hand, Keller contends that the harassment that she complains of affected a term, condition, or privilege of her employment and is based on race. (Rec. Doc. No. 59, p. 22). "Tunnell and Trepagnier fostered a hostile work environment by harassing the White employees through acts of discrimination and retaliation, and by ignoring their complaints about workplace safety and permitting Berry, Berfect and Lee to physically attack and/or verbally abuse White employees without consequence." *Id*. Furthermore, plaintiff states that "[t]he work environment was sufficiently hostile to cause three different employees to take leave to obtain medical treatment for stress, anxiety, and depression." *Id*. Plaintiff describes this not as an isolated incident, but "a constellation of racially motivated acts and inactions that in their totality altered the terms and conditions of Keller's employment, constituting a hostile work environment and ultimately causing personal injuries." *Id*. at 22-23.

"A wide range of behaviors can make a workplace uncivil, but [] plaintiffs must show as one of the factors for their Title VII claim that the events were based on race." *Hernandez*, 670 F.3d at 652 (Noting that, "the evidence reveals a workplace that could be quite mean-spirited,

crude, and insulting. The issue [] to decide is whether federal rights were violated") (citing *Ramsey*, 286 F.3d at 268). To survive this motion for summary judgment, plaintiff needed to point to specific facts in the record to demonstrate that Keller was harassed because of her race.

The Fifth Circuit considered a similar fact scenario in *Byrnes v. City of Hattiesburg*. There, plaintiff brought action against his employer alleging discrimination and hostile work environment.  Plaintiff complained that his co-worker threatened to steal and wreck his car. On another occasion, Plaintiff alleged that his co-worker walked into his office, blocked his pathway, and refused to leave. The co-worker never mentioned anything about plaintiff's race or disability. The harassment reached its peak when the co-worker walked into plaintiff's office without saying anything, put his hands on plaintiff's chest and pushed him. Plaintiff developed severe anxiety which resulted in a six-month leave. Byrnes claims his co-worker harassed him because of his race and disability and his employer failed to adequately redress the harassment, which created a hostile work environment in violation of Title VII. The district court granted summary judgment in favor of the defendant and the Fifth Circuit affirmed finding that plaintiff "failed to create a genuine issue of material fact that he was harassed because of his race or disability." *Byrnes v. City of Hattiesburg*, 662 Fed.Appx. 288, 290 (5th Cir. 2016). The Fifth Circuit noted that, "[t]he indirect evidence consists of nothing more than an observation that Byrnes is a Caucasian with cerebral palsy, which also makes him a racial minority at work, and that he was harassed by an African American." *Byrnes*, 662 Fed.Appx. at 290-91 (citing *Hernandez*, 670 F.3d at 652) (concluding that a Caucasian employee threatening a Hispanic employee was "no[t] evidence that the event had anything to do with race"). Those facts, standing alone, were insufficient to establish a Title VII violation. Consequently, the court concluded that without more, the evidence did not support a finding that the plaintiff suffered race or disability-based harassment. *Id*. As here, the Plaintiff

admitted that his race and disability were never referenced during his harassment. *Id*. at 291. The court, therefore, found that a plaintiff must come forward with more than speculation of unlawful harassment to survive summary judgment. *Id*.

In evaluating the evidence in the instant case, the Court finds that it is clear Keller subjectively perceived the environment as hostile. Additionally, a reasonable person would likely find the environment objectively hostile. The record fully supports that the CPO was not a pleasant place to work, however, the record is insufficient to show that the harassment stemmed from conduct not prohibited by Title VII or that Keller was harassed because of her race. Plaintiff points to, "CPO managers not addressing the loud, abusive and threatening conduct of Keller's coworkers, Berfect and Lee, despite her pleas for help; Keller witnessing Trepagnier remove Thomas from serving as a 204B supervisor[] because the African American female employees 'were uncomfortable' with him, despite the fact that they had been working with him for three months; and Tunnell harassing her by changing the classification of her leave on two different occasions." (Rec. Doc. No. 59, p. 23). Keller stresses that her social worker could see that she was suffering from stress and anxiety as "a direct result of her work environment." *Id*. Plaintiff suggests that these actions at the CPO show a pattern of decision making based on race. As in *Byrnes,* however, Keller provides no evidence of racial animus besides the fact that she is white and Tunnell, Trepagnier, and Berfect are black. Furthermore, Plaintiff acknowledges that "the behavior of Berfect and Lee may have indeed frightened *both Black and White employees*," but argues that, "it was the managers' turning a blind eye to the abusive and outrageous conduct…that created the dangerous and hostile work environment under the water of a 'zero tolerance' policy." *Id* at p. 24. (emphasis added).

Again, this Court does not doubt that the CPO was a toxic work environment, likely violating USPS' own Zero Tolerance manual. However, Keller has failed to provide sufficient facts to create a genuine issue of material fact regarding whether the hostile work environment can be attributed to her race. Therefore, the request to dismiss plaintiff's hostile work environment claim is **GRANTED**.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED ADJUDGED AND DECREED** that the Motion for Summary Judgment filed by Louis Dejoy (Rec. Doc. No. 43) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ORDERED** that the motion regarding the exhaustion of claims related to incidents involving Berfect are **DENIED**.

**IT IS FURTHER ORDERED** that the motion regarding the exhaustion of claims related to incidents involved Eboni Lee are **GRANTED**.

**IT IS FURTHER ORDERED** that the motion regarding the disparate treatment claims on the denial of leave time is **DENIED**.

**IT IS FURTHER ORDERED** that the motion regarding the hostile work environment claims is **GRANTED**.

New Orleans, Louisiana, this 10th day of January, 2022.

_____
**DANA M. DOUGLAS**
 **UNITED STATES MAGISTRATE JUDGE**